# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 22, 2016

Plaintiff-Appellee,

v

No. 324408
Oakland Circuit Court

CASSALLE LEROY NETTLES,

LC No. 2014-249489-FC

Defendant-Appellant.

Before: TALBOT, C.J., and WILDER and BECKERING, JJ.

PER CURIAM.

A jury convicted defendant, Cassalle Nettles, of first-degree felony murder, MCL 750.316(1)(b), armed robbery, MCL 750.529, felon in possession of a firearm, MCL 750.224f, and three counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of life without parole for the murder conviction, 37 to 60 years for the robbery conviction, and 76 months to 50 years for the felon-in-possession conviction, to be served consecutive to three concurrent two-year terms of imprisonment for the felony-firearm convictions. Defendant appeals as of right, and we affirm.

Defendant's convictions arise from the shooting death of Duraid Lossia during a robbery at Tom's Party Store in the city of Farmington Hills. Lossia was the store's owner. The prosecution presented extensive circumstantial evidence at trial to establish that defendant, by design, was the only person in Tom's Party Store at the time Lossia was shot, and that defendant's actions before and after the shooting evidence his guilt. Defendant asserted at trial that while he happened to be in the party store when another person shot the victim, he did not report the crime because he was concerned about his safety and what the police might think given his prior criminal record, which he claimed did cause the officers to focus only on him.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant contends that the prosecution failed to present sufficient evidence to establish his identity as the person who robbed the store and shot the victim. We disagree.

When ascertaining whether sufficient evidence was presented at trial to support a conviction, this Court views the evidence in a light most favorable to the prosecution and determines whether a rational trier of fact could find that the essential elements of the crime were

-1-

proven beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). Circumstantial evidence and reasonable inferences arising from it may be used to prove the elements of a crime. *People v Brantley*, 296 Mich App 546, 550; 823 NW2d 290 (2012). "The credibility of witnesses and the weight accorded to evidence are questions for the jury, and any conflict in the evidence must be resolved in the prosecutor's favor." *People v Harrison*, 283 Mich App 374, 378; 768 NW2d 98 (2009).

Defendant argues only that his identity as the perpetrator of the charged crimes was not supported by sufficient evidence. Identity is an essential element in every criminal prosecution, *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008), and a defendant's identity as the perpetrator of the charged crime must be established beyond a reasonable doubt, *People v Kern*, 6 Mich App 406, 409–410; 149 NW2d 216 (1967). Identity may be established by circumstantial evidence and any associated reasonable inferences. *People v Nelson*, 234 Mich App 454, 459; 594 NW2d 114 (1999); *Kern*, 6 Mich App at 409-410.

The prosecution presented substantial evidence, including defendant's own statement, that placed defendant in the store at the time of the robbery. Indeed, the timeline evidence established by testimony from customers who observed defendant and were in the store either shortly before and shortly after the shooting, and the electronic evidence of the times of their purchases, supported an inference that defendant was the only person in the store at that time. While no gun was recovered, the police did recover a holster at defendant's home. Although defendant told the police that he just happened to be in the store at the time other assailants entered the store and robbed and shot the owner, no one else was seen by other customers, or caught on camera, during the narrow timeframe the robbery could have been committed. Regardless, any credibility questions were for the jury to decide. *Harrison*, 283 Mich App at 378. The prosecution also presented evidence that defendant had parked his vehicle at a distant location from the store and then walked to the store, which is inconsistent with his purported reason for being there. In addition, the clothing defendant wore into the store at the time of the incident disappeared, defendant's story changed several times during his police interview, and the prosecution presented evidence that defendant had attempted to establish a false alibi. Viewed in a light most favorable to the prosecution, the evidence was sufficient to establish defendant's identity as the person who committed the robbery and shot Lossia, beyond a reasonable doubt.

## II. OTHER ACTS EVIDENCE

Defendant also argues that the trial court erred when it permitted the prosecutor to introduce evidence of two armed robberies that defendant committed in 1997 under the auspices of proving intent and a common scheme or plan. This Court reviews a trial court's evidentiary ruling for an abuse of discretion, but reviews de novo preliminary questions of law, such as whether an evidentiary rule applies and excludes the evidence. *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014). An abuse of discretion exists when the court selects an outcome that falls outside the range of principled and reasonable outcomes. *People v Waclawski*, 286 Mich App 634, 670; 780 NW2d 321 (2009).

MRE 404(b)(1) precludes the admission "of crimes, wrongs, or acts 'other' than the 'conduct at issue in the case' that risks an impermissible character-to-conduct inference." *People v Jackson*, 498 Mich 246, 262; 869 NW2d 253 (2015). To be admissible under MRE 404(b)(1) other acts evidence must be offered for a proper purpose, must be relevant, and its probative value must not be substantially outweighed by its potential for unfair prejudice. *Id*. at 258-260; *People v Starr*, 457 Mich 490, 496; 577 NW2d 673 (1998). A proper purpose is one other than establishing the defendant's character to show his propensity to commit the offense, "such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material[.]" MRE 404(b)(1). The rule is not exclusionary and the aforementioned list is nonexhaustive. *Jackson*, 498 Mich at 259. "MRE 404(b) requires the exclusion of other-acts evidence if its only relevance is to show the defendant's character or propensity to commit the charged offense." *People v Watkins*, 491 Mich 450, 468; 818 NW2d 296 (2012).

Of the two types of actions that can support a finding of a common scheme or plan, one includes "where the defendant allegedly devise[d] a plan and us[ed] it repeatedly to perpetrate separate but very similar crimes." *People v Sabin*, 463 Mich 43, 63; 614 NW2d 888 (2000) (quotation marks and citation omitted).[1] In defining the similarity needed, the Court in *Sabin* stated:

> The added element, then, must be, not merely a similarity in the results, but such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations. [*Id*. at 64-65 (quotation marks and citation omitted).]

The prosecutor admitted at trial evidence regarding two armed robberies defendant committed in 1997. Each offense involved defendant robbing a woman at gunpoint during daytime hours either in or near a bank parking lot. Defendant left the scene on each occasion by way of a getaway car that was parked at a distant location from the scene of the crime. The trial court read to the jury a limiting instruction both prior to the admission of the evidence and at the close of proofs. The trial court also provided the jury with a printed copy of the limiting instruction regarding other acts evidence.

Defendant objected to the introduction of the evidence and contended that it was not admissible for any reason other than to improperly prove propensity. The prosecutor contended that it was relevant to prove defendant's intent and a common scheme or plan. With respect to intent, the prosecutor claimed that in defendant's statement to police—which was admitted as evidence and played to the jury—he claimed to be in Tom's Party Store in order to buy items for himself and his wife. According to the prosecutor, the circumstances in the prior armed robberies were relevant to show that defendant's actual intent in being in the store was to rob the owner. With regard to a common scheme or plan, the prosecutor argued that the other acts

---

[1] The other type includes a series of actions to support one overall plan containing both charged and uncharged misconduct "as stages in the plan's execution." *Sabin*, 463 Mich at 62 (quotation marks and citation omitted).

evidence was relevant to show that defendant had a common plan or scheme of robbing vulnerable individuals he knew would have quick access to cash, during daylight hours, while armed with a gun, using as an escape a distantly parked getaway car. The prosecutor also argued the prior acts showed that defendant had learned from his mistakes and tried to hone his technique by parking even further away from the crime scene and leaving no witnesses alive.[2]

We find that the relevancy of the other acts evidence for purposes other than propensity is somewhat questionable. With regard to intent, it is a stretch to claim that defendant's prior commission of two armed robberies tended to show that his intent in being in Tom's Party Store was to rob, not to shop. The mere fact that a person has robbed before does not mean that his or her intent when entering a store is to rob. Everyone needs to eat. It would be nothing more than propensity evidence to say that the prior robberies of two women outside a bank indicate an intent to rob when entering a store. With regard to showing a common scheme or plan, it is not uncommon for an armed robber to commit a crime in the daytime using a gun. A gun is often the weapon of choice for armed robbers, and most stores are open and people are out and about during the daytime. Such circumstances do not illustrate "a concurrence of common features" so as to "naturally . . . be explained as caused by a general plan of which they are the individual manifestations." *Sabin*, 463 Mich at 64-65. Furthermore, the purse snatchings date back to 1997, sixteen years earlier. Although defendant was apparently incarcerated for a good part of the intervening time period, it is a bit of a stretch to say that he "devise[d] a plan and us[ed] it repeatedly to perpetrate separate but very similar crimes." *Sabin*, 463 Mich at 63 Further, while defendant's parking his car a distance away from Tom's Party Store before entering is highly relevant to his motive for going there, it is also a rather close call to say that his parking away from the crime scenes at the time of his 1997 purse snatchings manifests a common plan or scheme.

Nevertheless, even if the other acts evidence was admitted in error, defendant is not entitled to reversal.

> If an error is found, defendant has the burden of establishing that, more probably than not, a miscarriage of justice occurred because of the error. No reversal is required for a preserved, nonconstitutional error unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative. [*People v Knapp*, 244 Mich App 361, 378; 624 NW2d 227 (2001) (citation and quotation marks omitted); See also MCL 769.26.[3]]

---

[2] On appeal, the prosecution offers several additional reasons why the two 1997 robberies were relevant, all of which we find to be either a highly speculative reach (e.g. defendant got caught in 1997, so those prior crimes show a "motive" to kill Lossia to eliminate the only eyewitness to his robbery) or off-base.

[3] MCL 769.26 provides, in pertinent part:

As noted above, the prosecution submitted extensive evidence that placed defendant at Tom's Party Store—including defendant's own admission to police—at the time of the shooting. And there was no evidence to indicate that anyone else was in the store other than defendant when Lossia was shot. Defendant's conduct before and after the shooting discredit his purported reasons for being in the store, and the jury had an opportunity to watch defendant's own statements to police regarding his conduct, which included him changing his story multiple times. Although the other acts evidence was prejudicial in that it disclosed defendant's prior involvement in criminal activity, this prejudicial aspect was lessened because the jury was aware from the felon-in-possession charge that defendant had a prior felony conviction and because defendant had offered the fact that he had a prior criminal history to explain why he did not report the robbery to the police, despite admitting that he was present in the store when the robbery and shooting occurred. In addition, the trial court instructed the jury on the limited permissible use of the other acts evidence, thereby further mitigating any potential for unfair prejudice. For these reasons, even if we were to conclude that the evidence was admitted in error, it does not "affirmatively appear that it is more probable than not that the error was outcome determinative." *Knapp*, 244 Mich App at 378.

### III. PROSECUTOR'S CONDUCT

Defendant contends that the prosecutor engaged in improper conduct during closing argument. Defendant acknowledges that there was no objection to the prosecutor's conduct at trial, leaving these claims unpreserved. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Defendant further argues, however, that defense counsel was ineffective for failing to object to the prosecutor's conduct.

Allegations of prosecutorial misconduct are considered on a case-by-case basis, and the reviewing court must consider the prosecutor's remarks in context." *Id.* Generally, issues of prosecutorial misconduct are reviewed de novo to determine whether the defendant was denied a fair and impartial trial. *Id.* However, unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights. *People v Gaines*, 306 Mich App 289, 308; 856 NW2d 222 (2014). Because defendant did not raise an ineffective assistance of counsel claim in a motion for a new trial or request for a *Ginther*[4] hearing, our review of that issue is "limited to mistakes apparent on the record." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). To establish ineffective assistance of counsel, defendant must "show both that counsel's performance fell below objective standards of reasonableness, and that it is reasonably probable that the results of the proceeding would have been different had it not been for counsel's error." *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007)

---

No judgement or verdict shall be set aside or reversed or a new trial granted by any court of this state in any criminal case, on the ground of . . . the improper admission or rejection of evidence . . .unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Defendant argues that the prosecutor committed misconduct when he told the jury in closing argument that defendant had repeatedly lied to the police and had lied to the jury. Defendant maintains that this was an improper denigration of defendant and defense counsel. Defendant challenges the following portion of the prosecutor's closing argument:

> And remember - - and we'll talk more about his interview in a little bit - - remember what he said in his interview, I got dropped off by a guy named Charlie Wilson, driving a black Malibu, in the parking lot. So that's - - when you review that interview, I think Detective McDonald got it right when he said I kind of lost track of the number of lies that he told. That's - - that's pretty much lie number one, right off the bat.

Defendant also maintains that the prosecutor committed misconduct when he argued that "you can't believe a word of what [defendant] says" and that defendant had told "numerous lies" during the police interview.

A prosecutor may not denigrate the defendant or defense counsel by personally attacking either of them. *People v McLaughlin*, 258 Mich App 635, 646; 672 NW2d 860 (2003). Likewise, the prosecutor may not personally attack the defendant's credibility with "intemperate and prejudicial remarks" and may not suggest that a defendant or defense counsel is trying to manipulate or mislead the jury. *People v Light*, 480 Mich 1198; 748 NW2d 518 (2008); *People v Bahoda*, 448 Mich 261, 283; 531 NW2d 659 (1995); *People v Watson*, 245 Mich App 572, 592; 629 NW2d 411 (2001). However, a "prosecutor may argue from the facts that a witness, including the defendant, is not worthy of belief, and is not required to state inferences and conclusions in the blandest possible terms." *People v Launsburry*, 217 Mich App 358, 361; 551 NW2d 460 (1996) (citations omitted); see also *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997). The thrust of the prosecutor's argument was to suggest that defendant should not be believed, because he had changed his story multiple times during his police interview, and because his explanation that he had been accompanied by his friend who had dropped him off at the store was contradicted by surveillance video evidence. Because evidence supported the prosecutor's statements that defendant had lied during his police interview, and other evidence showed that defendant's statements were not true, the prosecutor's statements were not improper.

Likewise without merit is defendant's related argument that, by stating that defendant had lied when speaking to the police, the prosecutor committed misconduct by improperly vouching for the investigating officer's credibility. While a prosecutor must generally refrain from implying that he has special knowledge regarding whether a witness is credible or worthy of belief, *Bahoda*, 448 Mich at 276, the prosecutor did not do so here. Rather, the prosecutor properly argued, based on the evidence, that defendant's claim of innocence was not credible. *Launsburry*, 217 Mich App at 361; *Howard*, 226 Mich App at 548. The prosecutor did not improperly vouch for the investigating officer's credibility by pointing out how defendant's statements during his interview were contradicted by other evidence.

Defendant also argues that it was improper for the prosecutor to refer to him as an "experienced felon" and to repeatedly reference the 1997 robberies during closing argument. However, prosecutors are "free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *People v Unger*, 278 Mich App 210, 236; 749

NW2d 272 (2008). The trial court had admitted the other acts evidence, and thus, the prosecutor was entitled to argue the relevance of that evidence for the purposes for which it was admitted. In addition, defendant's own statements during police interviews repeatedly referenced the notion that he had a prior criminal history in order to explain why he did not report the crime if he was there as an innocent bystander when it happened.

Lastly, because the prosecutor's conduct was not improper, defense counsel was not ineffective for failing to object. Failure to make a meritless objection cannot be construed to constitute ineffective assistance of counsel. *People v Wilson,* 252 Mich App 390, 393–394; 652 NW2d 488 (2002).

Affirmed.


/s/ Michael J. Talbot
/s/ Kurtis T. Wilder
/s/ Jane M. Beckering