# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CRYSTAL WILLIAMS, also known as
CRYSTAL LYNNE WILLIAMS,

Defendant-Appellant.

UNPUBLISHED
October 8, 2015

No. 322606
Wayne Circuit Court
LC No. 14-001744-FH

Before: GLEICHER, P.J., and SAWYER and MURPHY, JJ.

PER CURIAM.

Following a bench trial, the court convicted defendant of assault with intent to do great bodily harm less than murder, MCL 750.84(1)(a), and felonious assault, MCL 750.82, for beating her boyfriend on the head and face with an iron.[1] Defendant claimed self-defense. We may not interfere with the trial court's assessment of witness credibility, and the prosecutor otherwise presented sufficient evidence of the offense elements. Accordingly, defendant's challenge to the evidentiary sufficiency lacks merit. Defendant also has not overcome the presumption that her preliminary examination and trial attorneys were constitutionally effective. We therefore affirm.

## I. BACKGROUND

While celebrating their anniversary, defendant and her boyfriend, Albert Merrill, became intoxicated and belligerent with each other. This was not unusual as defendant and Merrill had a history of domestic violence. On the night in question, defendant's grown son, stepson, and nephew were visiting. Defendant's son tried to remove Merrill from the home, but departed in frustration when defendant declared that she wanted Merrill to stay. The other young men left as well. Alone in the home, defendant and Merrill began to argue violently. Defendant beat Merrill on the head and face with a metal clothes iron, and bit and tried to strangle him. Merrill required stitches for his severe lacerations and had to wear a neck brace. Merrill shot defendant twice,

---

[1] The court acquitted defendant of assault by means of strangulation, MCL 750.84(1)(b).

-1-

once in the arm and once in the chest. The couple provided divergent accounts of the events leading to their injuries.

Merrill claimed that he tried to telephone for a taxi and gather his belongings, but defendant prevented his exit. When Merrill, who was disabled from bone cancer, sat down in a chair, defendant allegedly knocked him to the ground and sat on his legs to prevent him from moving. Merrill testified that defendant bit his hand, tried to strangle him, and grabbed a nearby iron and beat him savagely on the head and face. During the assault, defendant threatened to kill Merrill and hide his body in the basement. Merrill noticed his jacket lying on the floor and reached out for the handgun that he kept in the garment's pocket. Merrill asserted that he first shot defendant in the arm. Defendant continued her attack and Merrill shot a second time, hitting defendant in the chest. Defendant then climbed off of Merrill and called 911. Merrill escaped to the bathroom and hid the gun in the toilet tank, ostensibly to prevent defendant from gaining access to the weapon.

Defendant accused Merrill of starting the fight. She contended that she felt threatened by Merrill and attempted to call 911. Merrill hit her with an object to prevent her call. Defendant contended that she pushed Merrill into a chair in response to this attack. Merrill fell out of the chair and grabbed defendant's nightgown, pulling her down on top of him, she claimed. Defendant testified that Merrill continued to hit her and she grabbed the iron and struck Merrill in self-defense. She bit Merrill when he tried to punch her in the face and again when he tried to grab the iron. Defendant further indicated that Merrill first shot her in the chest as she tried to rise from the floor and did not shoot her in the arm until she headed downstairs to open the door for the police.

An officer who responded to the scene testified that he heard yelling as he approached the house. Defendant advised the officer when he entered that Merrill was upstairs and still armed. The officer ordered Merrill to descend with his hands raised. Merrill delayed and the officer heard him maneuvering the lid to the toilet tank. When Merrill came to the top of the stairs, the officer saw that the skin on his scalp was peeled back and he was covered in blood.

II. SUFFICIENCY OF THE EVIDENCE

Defendant contends that the trial court reached clearly erroneous factual findings at the close of the trial. Defendant further argues that her convictions were not supported by sufficient evidence and that the prosecution failed to adequately disprove her self-defense claim.

We review a trial court's factual findings in a bench trial for clear error. We must give deference to "the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." MCR 2.613(C). We review de novo a defendant's challenge to the sufficiency of the evidence. *People v Harrison*, 283 Mich App 374, 377; 768 NW2d 98 (2009). "In doing so, we must view all the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crimes were proven beyond a reasonable doubt." *Id.* at 377-378. All conflicts in the evidence must be weighed in the prosecution's favor, and questions of witness credibility and the weighing of the evidence are left in the hands of the fact finder. *Id.* at 378.

-2-

The court found defendant's tale of self-defense incredible. Defendant claimed that moments after her relatives left the house, Merrill threatened her to the point she tried to call 911. As defendant's son testified that he did not feel that defendant was in any danger, the court doubted that the situation escalated as quickly as defendant described. The court noted that defendant gave testimony inconsistent with her earlier statements to the police. On direct examination, defendant claimed that the fight began when Merrill struck her with his gun. She later backtracked when confronted with her statement in which she claimed she did not know what defendant used to hit her. The court emphasized that defendant was easily able to "overpower" Merrill who used a cane to ambulate and was "sick and frail." As noted on appeal, defendant was approximately 300 pounds at the time. The court further highlighted that defendant could have retreated once she pushed Merrill into the chair. Instead, defendant remained and "engage[d] in some sort of fisticuffs with him." That a man in Merrill's condition could pull defendant to the floor simply by tugging her nightgown "defie[d] all logic and common sense." Ultimately, the court found inadequate provocation for defendant's use of force and determined that she was the first to introduce a weapon (the iron) into the situation.

The chain of events during the fight also supported defendant's assault convictions, the court concluded. The court cited Merrill's testimony that he feared for his life as defendant straddled him and beat him with an iron. It noted the "clear brutal nature" of defendant's assault with the iron and the severity of Merrill's injuries. Although the court found suspect Merrill's decision to hide the gun after the police arrived, the court also disbelieved that he shot defendant as she descended to the first floor as the testifying officer made no mention of hearing a gunshot. The court found more credible Merrill's explanation that he shot defendant twice before she called 911.

We discern no ground to interfere with the trial court's factual findings. There were only two witnesses to the anniversary brawl and they provided conflicting versions of events. The court found Merrill to be the more credible witness. Based on Merrill's testimony, the nature of his wounds, and the improbability of defendant's story, the court rejected defendant's claim of self-defense. And it was the sole province of the court as the trier of fact to resolve this credibility contest.

Moreover, the evidence sufficiently supported the elements of the two offenses for which defendant was convicted. The elements of assault with intent to do great bodily harm less than murder are: " '(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder.' " *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014), quoting *People v Parcha*, 227 Mich App 236, 239; 575 NW2d 316 (1997). The "intent to do great bodily harm less than murder" necessary to satisfy the second element has been defined as " 'an intent to do serious injury of an aggravated nature.' " *Id.*, quoting *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005). The fact finder may infer the necessary intent "from the defendant's actions, including the use of a dangerous weapon or the making of threats," as well as the nature of the victim's injuries. *Id.* at 629. In relation to felonious assault, the prosecutor must prove: " '(1) an assault, (2) with a

dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery.' " *People v Nix*, 301 Mich App 195, 205; 836 NW2d 224 (2013), quoting *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). An object not designed to be a weapon may be considered a dangerous weapon when used as such. *People v Barkley*, 151 Mich App 234, 238; 390 NW2d 705 (1986).

Defendant's claim of self-defense also plays into the sufficiency question. If a criminal defendant raises a self-defense claim and presents "some evidence from which a jury" could excuse the defendant's conduct, the burden shifts onto the prosecutor to disprove the common-law defense beyond a reasonable doubt. *People v Dupree*, 486 Mich 693, 709-710; 788 NW2d 399 (2010). The Legislature codified self-defense at MCL 780.972, which provides that an individual not engaged in the commission of a crime may use deadly force, with no duty to retreat, if that individual has an honest and reasonable belief that such force is necessary to prevent imminent death or great bodily harm. MCL 780.972(1)(a); see also *Dupree*, 486 Mich at 707-708.

Defendant conceded the facts necessary to establish the underlying assault element of both charges. She readily admitted that she bit Merrill and beat him on the head and face with an iron. Defendant's testimony also established that her use of the iron turned this otherwise benign appliance into a weapon.

And the prosecution presented sufficient evidence from which the court could infer defendant's intent in contradiction of her self-defense claim. Merrill testified that defendant was the initial aggressor. He described how defendant incapacitated him and beat him on the head and face with an iron. During the assault, defendant threatened to kill Merrill and hide his body. Even after Merrill armed himself, he alleged that defendant continued to attack him. The nature of Merrill's injuries supported that defendant intended to commit great bodily harm. The beating pulled the skin from Merrill's scalp and he required numerous stitches to close his multiple lacerations. The force of the blows left blood splatter on the walls. Further, as noted by the court, defendant had the opportunity to walk away. The court found it unlikely that the sick and frail Merrill could pull the much larger defendant onto the floor by tugging her nightgown. Therefore, defendant could have left the room and called 911 rather than engaging in this attack. We have no grounds to interfere with that conclusion.

## III. ASSISTANCE OF COUNSEL

Defendant was represented by two separate appointed attorneys at the preliminary examination and trial. She challenges the adequacy of both attorneys' performance. Our review is limited to mistakes apparent on the existing record because defendant failed to move for a new trial or a *Ginther*[2] hearing in the lower court. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

"'[T]he right to counsel is the right to the effective assistance of counsel.'" *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984), quoting *McMann v Richardson*, 397 US 759, 771 n 14; 90 S Ct 1441; 25 L Ed 2d 763 (1970). An ineffective assistance claim includes two components: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To establish the deficiency component, a defendant must show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). With respect to the prejudice aspect, the defendant must demonstrate a reasonable probability that but for counsel's errors, the result of the proceedings would have been different. *Id.* at 663-664. The defendant also must overcome the strong presumptions that "counsel's conduct [fell] within the wide range of reasonable professional assistance" and that counsel's actions were sound trial strategy. *Strickland*, 466 US at 689. [*People v Galloway*, 307 Mich App 151, 157-158; 858 NW2d 520 (2014).]

Defendant first contends that counsel failed to adequately investigate her case because counsel did not obtain defendant's medical records. These records, defendant contends, would have revealed her history of anxiety to explain why her trial testimony was different from her early statements to the police. The records also would have supported that Merrill had previously broken defendant's nose, thereby supporting her claim of fear. Defense counsel has a duty to undertake reasonable investigations or to make a reasonable decision that renders particular investigations unnecessary. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Any choice to limit an investigation "is reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* (quotation marks and citation omitted). The failure to conduct an adequate investigation comprises ineffective assistance of counsel if it undermines confidence in the outcome of the trial. *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012).

The subject medical records were unnecessary to mount defendant's defense. Merrill admitted on the stand that he had assaulted defendant in the past. Even if the medical records showed that defendant suffered from clinical anxiety, this would likely not remediate her credibility. The court found defendant's version of events illogical and contrary to common sense. Explaining away defendant's confusion over the type of object with which defendant allegedly hit her would not remove the incredulity.

Defendant contends that counsel should have secured her medical records from the night in question, as these records were necessary to establish the seriousness of her injuries and the time she was shot. It was not disputed that Merrill shot defendant, however. While the seriousness of the injuries caused by one acting in self-defense can be relevant to show the actor's intent, that is not the case here. Gunshot wounds are always serious injuries, and the severity of defendant's injuries sheds no light on whether Merrill acted maliciously rather than in self-defense. Although the timing of the gunshots was at issue, defendant's medical records could not have resolved the issue. The gap in the parties' testimonies suggested a difference of only a few minutes, too close in proximity for a medical doctor to resolve the dispute. Defendant

further contends that the records would have shown that the staff gave her anxiety medication in the emergency room, potentially affecting her memory of events when she spoke to the police. As noted above, this explanation for defendant's inconsistency would not have saved her defense.

Defendant challenges her attorneys' decision not to present her nightgown into evidence. Defendant contends that the nightgown could have been used to show the distance from which she was shot and the angles. Defendant further asserts that counsel should have inspected her home for any bullet holes in the walls caused by the bullet travelling out of her body and questioned the officers about the number of shell casings they found in the home and the number of bullets the subject gun could hold. The decision not to present certain evidence only amounts to ineffective assistance of counsel if it deprives the defendant of a substantial defense. *People v Dunigan*, 299 Mich App 579, 589-590; 831 NW2d 243 (2013). According to both parties' testimony, Merrill first shot defendant while she was on top of him, although defendant claims she was attempting to move at the time. The trajectory for the first shot would be very similar regardless of whose version of events was accurate. In relation to the second shot, counsel had no reason to investigate further. Defendant claimed that she was on the stairwell, heading to open the door for the police, when Merrill fired the second shot. The responding officer made no mention of hearing a gunshot. Accordingly, further investigation would not have supported defendant's claim. And the parties agreed that Merrill fired only two shots. Counsel had no grounds to investigate further in that regard.

Defendant asserts that counsel should have questioned the ambulance driver and hospital staff to determine when her relatives left her home on the night in question. Defendant further contends that counsel should have questioned the other individuals in the home at the time of assault, i.e., her sons. The evidence clearly established that defendant's relatives were gone by the time the ambulance arrived. The responding officer testified that defendant and Merrill were alone in the house when emergency services came on the scene. And Merrill and one of defendant's sons testified that defendant's relatives had left the home before the physical altercation began. These witnesses could not have resolved "who the aggressor was and how drunk each of them was," contrary to defendant's position.

Defendant suggests that counsel should have sought discovery of her cellular telephone records to determine the timing of her 911 call and obtained a copy of the 911 recording. There is no dispute about the timing of defendant's 911 call. Defendant claims she tried to call 911 before the assault but that Merrill prevented her from hitting "send." Defendant and Merrill therefore agreed at trial that defendant did not call 911 until after the fight. And the content of the call would not assist defendant's defense in any appreciable way. Defendant had just been shot and therefore would have sounded in distress whether or not she had initiated the attack.

Defendant challenges counsel's failure to discover Merrill's cell phone number and the name of the taxi company he allegedly called. Merrill testified that defendant "knocked" the phone from his hand before he could summon a taxi. Accordingly, this evidence would not have been of assistance. Defendant further suggests that counsel should have questioned Merrill's doctor to gauge the accuracy of information about his frailty. However, the court was able to visibly assess Merrill's physical condition at trial and found him to be frail and much smaller than defendant.

Finally, defendant contends that counsel should have requested the inspection of Merrill's jacket to determine the amount and cause of any blood on that garment. Yet such inspection would not have uncovered useful evidence, however. The parties agree that blood was in the room from defendant beating Merrill with an iron and Merrill shooting defendant.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ David H. Sawyer
/s/ William B. Murphy