PEOPLE v HARRISON

Docket No. 279264. Submitted April 7, 2009, at Detroit. Decided April 14, 2009, at 9:20 a.m.

A Cheboygan Circuit Court jury convicted Kenneth R. Harrison of possession of counterfeit bank bills, possession of counterfeiting tools, and two counts of using a computer to commit a crime. The court, Scott L. Pavlich, J., entered a judgment consistent with the verdict. The defendant appealed, contending that his use of a computer, scanner, and printer to produce counterfeit bills on resume paper was not the use of a "tool" for counterfeiting in violation of MCL 750.255.

The Court of Appeals *held*:

1. The language of MCL 750.255, which prohibits a person from adapting a tool to make counterfeit bills, includes within its meaning the use of computers to make counterfeit bills. The statute speaks broadly of tools, instruments, or implements used to counterfeit currency. Computers, scanners, and printers are each a "tool" because they are used as a means of accomplishing a task. The defendant admitted that he adapted the tools that he used for forging counterfeit bills.

2. The evidence supports the conclusion that the defendant possessed counterfeit bills with the "intent to utter or pass the same, or to render the same current as true," in violation of MCL 750.254.

3. A rational trier of fact could find that the essential elements of the crimes were proven beyond a reasonable doubt.

Affirmed.

1. FRAUD — BILLS, NOTES, AND CHECKS — COUNTERFEITING — COMPUTER TECHNOLOGY USED FOR COUNTERFEITING.

The phrase "other tool" in the statute that prohibits a person from adapting a tool to make counterfeit bills or notes encompasses a defendant's use of a computer, scanner, printer, and resume paper to make counterfeit bills or notes (MCL 750.255).

2. CRIMINAL LAW — COUNTERFEITING — POSSESSION OF COUNTERFEIT BILLS OR
   NOTES — WORDS AND PHRASES — UTTER AND PUBLISH — RENDERING
   COUNTERFEIT BILLS OR NOTES.

   A conviction of possession of a counterfeit bill or note requires the
   prosecution to show that the defendant possessed a counterfeit bill
   or note and that the defendant intended to utter or pass or render
   the bill or note as true while knowing that the bill or note was
   counterfeit; to "utter" means to put something into circulation; to
   "utter and publish" means to offer something as if it is real,
   whether or not anyone accepts it as real; to "render" is to transmit
   or deliver (MCL 750.254).

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*,
Solicitor General, *Catherine M. Castagne*, Prosecuting
Attorney, and *William E. Molner*, Assistant Attorney
General, for the people.

*Daniel J. Rust* for the defendant.

Before: ZAHRA, P.J., and O'CONNELL and K. F. KELLY,
JJ.

PER CURIAM. Defendant appeals as of right his jury
trial convictions of possession of counterfeit bank bills,
MCL 750.254, possession of counterfeiting tools, MCL
750.255, and two counts of using a computer to commit
a crime, MCL 752.796, MCL 752.797(3)(d), and MCL
752.797(3)(e).[1] Our disposition of this matter requires

---

[1] MCL 750.255 served as the predicate offense for one of defendant's
convictions under MCL 752.796, while defendant's conviction under
MCL 750.254 served as the predicate offense for defendant's second
conviction under MCL 752.796. MCL 752.796(1) provides:

   A person shall not use a computer program, computer, com-
   puter system, or computer network to commit, attempt to commit,
   conspire to commit, or solicit another person *to commit a crime.*
   [Emphasis added.]

MCL 752.797(3) provides the terms of imprisonment for a person guilty
of violating MCL 752.796 depending on the punishable term of the
underlying offense.

us to determine whether the language of MCL 750.255, which prohibits a person from adapting a "tool" to make counterfeit bills, includes within its meaning the use of computers to make forged bills. We hold that it does, and we affirm.

## I. BASIC FACTS

In October 2005, Brian Keiser was driving his coworker, Andrew Gerrity, home from work. Keiser asked for money to pay for gas and Gerrity gave him a $100 bill. Keiser then stopped for fuel, but when he produced the $100 bill the cashier determined that the bill was counterfeit. The manager of the store called the police. When a police officer arrived at the scene, Gerrity identified defendant as the source of the bill. Gerrity stated that he took the $100 bill from defendant's wallet the previous evening because he thought defendant owed him money. The police confirmed that the bill was counterfeit because it did not have a security strip, imbedded fibers, or a watermark.

Gerrity agreed to cooperate with the police in the ensuing investigation. In a recorded telephone conversation between Gerrity and defendant, defendant indicated that he was capable of making counterfeit money and described the process he used to make the bills. Defendant referred to a previous incident when defendant had given Gerrity a fake bill to pay for gas and the store clerk had accepted it. Defendant also spoke of printing $6,000 to $7,000 in counterfeit bills over the ensuing weekend to use at a casino. Subsequently, defendant admitted in a police interview that he had printed $20 and $100 bills, but had only kept one of the $100 bills as "bait money" to catch someone he thought was stealing from him.

Defendant was charged and the matter went to trial. Gerrity's mother testified that defendant had told her

that he only needed a computer to make the fake money and that he had done it before. Defendant's previous roommate, Mike Hyde, testified that defendant told him that he had made the money on the computer and had admitted making some $20 and $100 bills, because he had debt and a gambling addiction. Defendant's friend, Nicole Hatton, had seen in defendant's bedroom a printer that was producing what looked like sheets of money. A police detective testified that digital images of $5, $20, and $100 bills were found on defendant's seized computer and that they were last accessed three times in October 2005. In addition, eight torn-up counterfeit $20 bills recovered from defendant's wastebasket were admitted into evidence.

Defendant also testified at trial. He admitted making counterfeit bills at his home, using resume paper, a scanner, a computer, and a printer to create the bills. Defendant testified that he had made these bills "to catch" a thief who had taken things from his home. Previously, defendant's wallet and "hundreds" of pain pills had allegedly disappeared from defendant's home in the summer of 2005. According to defendant, he planned to identify the thief by luring him with the fake bill and, then, the thief would get caught using the bill at a store. At the close of trial, the jury convicted defendant of all four counts.

## II. STANDARDS OF REVIEW

The thrust of defendant's argument is that the evidence did not sufficiently support his convictions. We review claims of insufficient evidence de novo. *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007). In doing so, we must view all the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential

elements of the crimes were proven beyond a reasonable doubt. *People v Schumacher*, 276 Mich App 165, 167; 740 NW2d 534 (2007). The credibility of witnesses and the weight accorded to evidence are questions for the jury, and any conflict in the evidence must be resolved in the prosecutor's favor. *People v McGhee*, 268 Mich App 600, 624; 709 NW2d 595 (2005). Circumstantial evidence and reasonable inferences arising therefrom may be sufficient to prove all the elements of an offense beyond a reasonable doubt. *Schumacher, supra* at 167.

We also review de novo matters of statutory construction. *People v Holley*, 480 Mich 222, 226; 747 NW2d 856 (2008). In doing so, our primary goal is to discern and give effect to the intent of the Legislature. *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006). The first step in determining legislative intent is to examine the specific language of the statute. *People v Lively*, 470 Mich 248, 253; 680 NW2d 878 (2004). The meaning plainly expressed is presumed to be the intent of the Legislature. *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 219; 731 NW2d 41 (2007). Judicial construction is only appropriate if the statute is ambiguous. *People v Warren*, 462 Mich 415, 427; 615 NW2d 691 (2000).

### III. ANALYSIS

Due process requires that the prosecutor prove all the elements of the crimes charged beyond a reasonable doubt. *People v Tombs*, 472 Mich 446, 459; 697 NW2d 494 (2005) (opinion by KELLY, J.). Defendant's contention is that the prosecutor failed to do so in his case because there was insufficient evidence of intent and because MCL 750.255 does not contemplate the use of a computer. We disagree.

## A. MCL 750.255

Before considering defendant's argument regarding intent, we first consider the meaning of the language in MCL 750.255 and whether it applies to defendant. Defendant asserts that the evidence was insufficient to support his conviction under this·provision, and his derivative conviction under MCL 752.796(1), because the language of the statute does not contemplate the use of a computer to make a counterfeit bill. Defendant contends that the statute prohibits a person from making a tool specifically designed for producing counterfeit money. Because his computer was not specifically designed to make counterfeit money, it follows that the statute does not contemplate it. We disagree with defendant's interpretation.

We note that the statute at issue was enacted early in Michigan's statehood. 1846 RS, ch 155, § 9. As defendant notes, the statute has not been substantially altered since that time and now reads, in pertinent part:

> Any person who shall engrave, make or mend, or begin to engrave, make or mend, any plate, block, press or other tool, instrument or implement, or shall make or provide any paper or other material, adapted or designed for the forging and making any false or counterfeit note, certificate or other bill of credit . . . issued by lawful authority . . . and any person who shall have in his possession any such plate or block, engraved in whole or in part, or any press or other tool, instrument or implement, or any paper or other material, adapted and designed as aforesaid, with intent to use the same, or to cause or permit the same to be used in forging or making any such false or counterfeit certificates, bills or notes, shall be guilty of a felony . . . . [MCL 750.255.]

Thus, to sustain a conviction under this provision, the prosecutor must show that defendant has "engrave[d], ma[de] or mend[ed]" a tool, or made or provided paper,

or has in his possession such a tool that is "adapted or designed for the forging and making [of] . . . counterfeit note[s,] . . . with [the] intent to use the same . . . in forging . . . counterfeit certificates . . . ." While it is clear to us that the intent of this language is to criminalize the production of a copy or imitation of official, negotiable currency, it is also obvious that the Legislature that drafted the bill could not have anticipated the development of computer technology, let alone how it could be adapted to produce counterfeit currency. It is also true that the named tools in the statute are all things that are physically manipulated in the process of producing an image. Nonetheless, as originally drafted—and still to the present day—the statute speaks broadly of tools, instruments, or implements used to counterfeit currency. And, a computer, scanner, and printer, which defendant used in this case, are each a "tool" because they are "used as a means of accomplishing a task . . . ." *Random House Webster's College Dictionary* (1997). Accordingly, we hold that the phrase "other tool," as used within MCL 750.255, plainly encompasses defendant's use of his computer, scanner, printer, and resume paper as tools, instruments, other implements, and paper adapted for counterfeiting.

In rejecting defendant's argument, we note that his position focuses on implements *designed* for such a purpose and ignores instruments *adapted* for such a purpose. The verb "adapt" means, in part, to "adjust or modify fittingly." *Random House Webster's College Dictionary* (1997). Using an existing computer, scanner, and printer to counterfeit money involves modifying the normal intended uses of these tools to achieve the goal of creating counterfeit currency.

Further, the evidence presented was sufficient to support defendant's conviction under this provision. Defendant admitted using his computer, scanner, and

printer to produce false bills. Defendant said that he scanned images of authentic currency with his scanner, and a detective found images of authentic currency on defendant's computer hard drive. Defendant then adapted the printer and paper to produce counterfeit bills by printing the images on the resume paper. It is plain under these facts that defendant adapted tools that he intended to use, and did use, for forging counterfeit bills.

### B. MCL 750.254

Defendant's argument that the evidence was insufficient to support his conviction under MCL 750.254 because he did not intend to pass the bills as legal tender also fails.[2] MCL 750.254, which requires that the prosecutor prove intent beyond a reasonable doubt, provides, in relevant part:

> Any person who shall bring into this state, or shall have in his possession, any false, altered, forged or counterfeit bill or note in the similitude of the bills or notes payable to the bearer thereof, . . . with intent to utter or pass the same, or to render the same current as true, knowing the same to be false, forged or counterfeit, shall be guilty of a felony . . . .

Thus, the prosecutor must show that defendant had in his possession a counterfeit bill or bills, and that he intended to "utter" or "pass" or "render" those bills as true, while knowing that those bills are counterfeit. MCL 750.254. "To utter means to put something into circulation. To utter and publish means to offer something as if it is real, whether or not anyone accepts it as real." CJI2d 22.22. To "render" is "[t]o transmit or deliver." Black's Law Dictionary (8th ed).

---

[2] Defendant's argument with respect to intent is only directed toward his conviction under MCL 750.254.

Contrary to defendant's position, the evidence and reasonable inferences arising therefrom support the conclusion that defendant possessed counterfeit bills with the "intent to utter or pass the same, or to render the same current as true," MCL 750.254. Defendant recounted in the recorded telephone call with Gerrity the process that he used to make counterfeit bills, implying more than a one-time interest in the subject. Gerrity's mother testified that defendant had said that he had counterfeited money in the past, and defendant's friend testified that she once saw defendant printing out what looked like sheets of money. Defendant's computer revealed that he accessed images of the bills at least three times in October 2005. On the tape, defendant and Gerrity also talked of making money to pass at a casino, with defendant asserting that he could produce $6,000 to $7,000 over the weekend. Defendant also recalled how Gerrity had successfully passed a different counterfeit $100 bill that defendant had given Gerrity to pay for gas. Additionally, defendant's past roommate stated that defendant admitted counterfeiting money because of debts resulting from a gambling addiction and overspending. A trier of fact can infer a defendant's intent from his words, acts, means, or the manner used to commit the offense. *People v Hawkins*, 245 Mich App 439, 458; 628 NW2d 105 (2001). All this evidence sufficiently shows defendant's intent to pass the counterfeit money as legal tender.

While defendant did provide an alternative explanation for his actions, i.e., he created the forged bills to trap an alleged thief, it is for the trier of fact to assess the credibility of witnesses and the weight to be given the evidence. *People v Passage*, 277 Mich App 175, 177; 743 NW2d 746 (2007). We note that even if the jury had believed defendant's testimony, the evidence would still be sufficient to support his convictions. This is because

his testimony revealed his intent to introduce the counterfeit bills into the stream of commerce and to use his computer, printer, and scanner to make the forged bills. Defendant elaborated that his plan was for the person who was stealing from him to take the false bill that he planted, use it, and get caught. The plan was to first pass the bill from himself to the targeted thief. Secondly, the thief was then expected to inject it into the stream of commerce. While defendant hoped that the thief would be stopped and caught, he had no plan that would aid or assure bringing about that outcome. Regardless of whether the supposed thief were caught, it was defendant's intent that the bill be passed and uttered twice. Thus, viewing the evidence in the light most favorable to the prosecution, it is clear that a rational trier of fact could find that the essential elements of the crimes were proven beyond a reasonable doubt, and we decline to grant the relief requested.

Affirmed.