# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
September 20, 2018

Plaintiff-Appellee,

v

No. 338360
Wayne Circuit Court
LC No. 16-010656-01-FJ

TYLER MAURICE TATE,

Defendant-Appellant.

Before: M. J. KELLY, P.J., and MARKEY and FORT HOOD, JJ.

PER CURIAM.

Defendant, Tyler Tate, appeals as of right his jury trial convictions of first-degree premeditated murder, MCL 750.316(1)(a), making a false report of a felony, MCL 750.411a(1)(B), and lying to a police officer in a criminal investigation, MCL 750.479c(2)(d)(*i*). The trial court sentenced Tate, a 16-year-old juvenile at the time of the offense, to prison terms of 40 to 60 years for the murder conviction, and one to four years for each remaining conviction, to be served concurrently. For the reasons explained below, we affirm.

## I. BASIC FACTS

Tate's convictions arise from a gang-related shooting at the Eastland Mall in Harper Woods, which resulted in the death of Tyrell Lane. Tate, along with codefendants Brendon Stanton-Lipscomb, Demetrius Armour, and Tyshon Taylor were all members or supporters of the street gangs Eastside Ghetto Boys (EGB) or Rob Gang. Stanton-Lipscomb had formed the Rob Gang after the September 2013 shooting death of Stanton-Lipscomb's cousin and close friend, Robert Carter. Members of the Hob Squad gang, which is a subgroup of the Seven Mile Bloods gang, were believed to be responsible for Carter's shooting death. The Hob Squad gang and the Rob Gang were rivals and were hostile to each other. Lane, the victim, was a member of the Hob Squad.

On December 26, 2015, Tate and Taylor were at the Eastland Mall and overheard Lane make a disparaging remark about the Rob Gang. Taylor called Stanton-Lipscomb and told him about the remark. Stanton-Lipscomb and Armour drove to the mall. According to Taylor, who testified at Tate's trial pursuant to a plea agreement, Stanton-Lipscomb asked him over the phone to escort Lane to a location outside the mall where Stanton-Lipscomb could shoot him. Taylor refused, but gave his phone to Tate, who agreed to carry out Stanton-Lipscomb's plan. Tate led Lane through the Burlington Coat Factory store using an indirect route along the outer perimeter

-1-

of the store, past large windows where Stanton-Lipscomb could see them coming. After leading Lane through the Burlington store exit, Tate turned to his right, bringing Lane to Stanton-Lipscomb, who was concealed behind a pillar. Stanton-Lipscomb emerged from the pillar and shot Lane multiple times, killing him. Stanton-Lipscomb then fled the mall parking lot in a vehicle driven by Armour. Surveillance cameras inside and outside the mall captured these events.

Although the police initially believed that Tate was a targeted victim, further investigation led them to believe that both he and Taylor were participants in the offense. Stanton-Lipscomb, Armour, Taylor, and Tate were all eventually charged with first-degree premeditated murder in connection with Lane's death, and they were prosecuted separately. In June 2016, Stanton-Lipscomb was convicted of first-degree murder and possession of a firearm during the commission of a felony. Thereafter, Taylor pleaded guilty to a reduced charge of second-degree murder, and he agreed to testify at Tate's trial. Armour was convicted of first-degree murder at a jury trial in January 2017. In April 2017, another jury convicted Tate of the charges in the instant case. Stanton-Lipscomb's appeal in Docket No. 337433, and Armour's appeal in Docket No. 337434 have been submitted with the instant appeal.

## II. SUFFICIENCY OF THE EVIDENCE

### A. STANDARD OF REVIEW

Tate argues that the evidence was insufficient to support his conviction of first-degree murder under an aiding or abetting theory. "A challenge to the sufficiency of the evidence in a jury trial is reviewed de novo, viewing the evidence in the light most favorable to the prosecution, to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014). "The credibility of witnesses and the weight accorded to evidence are questions for the jury, and any conflict in the evidence must be resolved in the prosecutor's favor." *People v Harrison*, 283 Mich App 374, 378; 768 NW2d 98 (2009).

### B. ANALYSIS

"The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). The prosecution's theory was that Tate aided or abetted Stanton-Lipscomb in murdering Lane by luring Lane to the location where he was shot, knowing that Stanton-Lipscomb intended to shoot him. The following elements must be proven to support a conviction under an aiding or abetting theory:

(1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement. [*People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999) (quotation marks and citations omitted).]

Moreover, "because it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

Tate argues that the prosecution failed to prove his guilt of first-degree murder under an aiding or abetting theory because there was no evidence that he "did anything that was not inevitably going to happen." He contends that Stanton-Lipscomb was determined to kill Lane when Lane walked out of the mall, regardless of whether Tate walked alongside him. Tate also argues that there was no evidence that he had knowledge of Stanton-Lipscomb's intent or plan, other than unsubstantiated conjecture regarding his telephone contact with Stanton-Lipscomb.

Yet, Tate's arguments overlook Taylor's testimony and the substantial circumstantial evidence regarding his intentions. Taylor testified that he was with Tate when he spoke to Stanton-Lipscomb on his cell phone and refused Stanton-Lipscomb's request to escort Lane out of the mall so that Stanton-Lipscomb could shoot Lane. Taylor then passed his phone to Tate, who agreed to walk Lane out of the mall. According to Taylor, he and Tate specifically discussed the plan for Tate to walk Lane out of the mall, where he would be shot by Stanton-Lipscomb. Taylor's cell phone records and surveillance videos corroborated Taylor's testimony that Tate spoke to Stanton-Lipscomb on Taylor's cell phone before Tate escorted Lane outside the mall. Although Tate attacks the credibility of Taylor's testimony, the credibility of the witnesses was for the jury to resolve. *Harrison*, 283 Mich App at 378. Moreover, Tate's conduct when escorting Lane through the Burlington store and his actions upon exiting the store also supported an inference that he was aware of Stanton-Lipscomb's plan and intent. Tate chose a path through the store that allowed Stanton-Lipscomb to see them approaching from his concealed location, and upon exiting the store, Tate turned toward a deserted area of the parking lot. This evidence allowed the jury to infer that Tate was aware of Stanton-Lipscomb's plan to ambush and shoot Lane, that he deliberately took an indirect route through the store to enable Stanton-Lipscomb to see them approaching the exit, and that he turned to his right after exiting the store because he knew that Stanton-Lipscomb planned to shoot Lane.

Tate's argument that Stanton-Lipscomb would have killed Lane regardless of Tate's actions is without factual or legal merit. Tate did not merely walk alongside Lane. Rather, it was Tate who lured Lane to the location where Stanton-Lipscomb was able to shoot him, after Taylor refused to do so. A witness, Deshon Smith, testified that Tate admitted that he enticed Lane to leave the store with him by offering marijuana. Although Lane would have left the mall eventually, it was Tate's actions that ensured that he would exit the mall at the location where Stanton-Lipscomb was waiting to shoot him. Accordingly, there is sufficient evidence to sustain Tate's conviction for murder under an aiding or abetting theory.

## III. ADMISSIBILITY OF EVIDENCE

### A. STANDARD OF REVIEW

After Lane was shot, Tate and Taylor went to the home of Taylor's friend, Smith, who testified that Tate admitted his role in the homicide. At the time of trial, Smith was serving a prison sentence for a home-invasion conviction. Tate attacked Smith's credibility by suggesting

that Smith had a motive to testify in a manner helpful to the prosecution to get a favorable parole recommendation from the prosecution. To rebut that suggestion, the prosecution sought to introduce Smith's prior consistent statement to the police in September 2016. The trial court admitted the statement. Tate now contends that the court erred by admitting the statement because Smith had another motive to falsify the prior statement at the time it was given. "This Court reviews for an abuse of discretion the trial court's decision to admit or exclude evidence." *People v Lane*, 308 Mich App 38, 51; 862 NW2d 446 (2014). "The trial court abuses its discretion when its decision falls outside the range of principled outcomes or when it erroneously interprets or applies the law." *Id*.

## B. ANALYSIS

Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). However, a statement is excluded from the definition of hearsay if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive . . . ." MRE 801(d)(1)(B). A statement is admissible under MRE 801(d)(1)(B) if:

> (1) the declarant must testify at trial and be subject to cross-examination; (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony; (3) the proponent must offer a prior consistent statement that is consistent with the declarant's challenged in-court testimony; and, (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose. [*People v Jones*, 240 Mich App 704, 707; 613 NW2d 411 (2000) (quotation marks and citation omitted).]

"[T]he motive in the second element must be the same motive in the fourth element of the four-pronged test to admit a prior consistent statement under MRE 801(d)(1)(B)." *Id*. at 711.

In this case, Tate offered two motives for Smith to fabricate his statements incriminating Tate: (1) to curry favor with authorities to improve his chances of parole, and (2) to assist his friend, Taylor, by shifting culpability to Tate. At trial, Tate set forth a timeline to demonstrate that Smith's police statements coincided with Taylor's plea negotiations. Taylor gave the police statements on August 30 and September 29, 2016, and then entered into a cooperation agreement on October 24, 2016. Tate argued that although Smith had information about Lane's murder since December 26, 2015, he did not cooperate with the police until September 2016, after Taylor began to cooperate. Thus, he argued that Smith had a motive to fabricate his prior statement to assist Taylor in obtaining favorable treatment. At the time of Tate's trial, however, Smith no longer had a motive to fabricate his testimony to aid Taylor, because Taylor had already entered in a plea agreement and been sentenced.

Consequently, at trial, Tate raised a different motive for Smith to lie, namely, that Smith had recently entered into an agreement to plead guilty in a home invasion case for which he was sentenced to a minimum prison term of 18 months, and he had a motive to cooperate with the prosecution to obtain a favorable recommendation in support of his early parole. This motive

was not present when Smith gave his statement in September 2016. Smith did not enter into his plea agreement in the home invasion case until February 2017, and he was sentenced in that case in March 2017. Tate cannot avoid admission of Smith's prior consistent statement by demonstrating that "any" motive to fabricate existed in September 2016; he must demonstrate that the same motive existed at the time of the prior statement and at the time of Smith's trial testimony. However, because the motive to fabricate his story in September 2016 is not the same motive to fabricate that was present at the time of trial, See *Jones*, 240 Mich App at 711, the trial court did not abuse its discretion by admitting the prior consistent statement.

## IV. INEFFECTIVE ASSISTANCE

### A. STANDARD OF REVIEW

Tate argues that his lawyer was ineffective for failing to investigate and call two witnesses. Because he did not raise this issue in an appropriate motion in the trial court, and this Court denied his motion to remand, our review of this issue is limited to errors apparent from the record. *People v Jackson (On Reconsideration)*, 313 Mich App 409, 431; 884 NW2d 297 (2015).

### B. ANALYSIS

To establish that a lawyer provided ineffective assistance, a defendant must show that "(1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness, and (2) but for counsel's error, there is a reasonable probability that the outcome of the defendant's trial would have been different." *People v Solloway*, 316 Mich App 174, 188; 891 NW2d 255 (2016). This Court will not second-guess a defense lawyer's strategic decisions, nor will we assess his lawyer's "competence with the benefit of hindsight." *People v Foster*, 319 Mich App 365, 391; 901 NW2d 127 (2017).

Tate argues that his lawyer was ineffective for not contacting and calling witnesses Miracle Hall and Devin Robinson. Decisions regarding which witnesses to call, and how to question witnesses, are presumed to be matters of trial strategy. *Jackson*, 313 Mich App at 432. A lawyer's failure to present certain evidence does not constitute ineffective assistance unless it deprives the defendant of a substantial defense. *Id*. "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (quotation marks and citation omitted). Further, a defendant claiming ineffective assistance must establish the factual predicate of his claim. *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003).

Tate relies only on his own affidavit to support his claim that Hall and Robinson would have provided favorable testimony. According to Tate's affidavit, Hall would have testified that Tate did not know Lane before December 26, 2015, and therefore had no motive to assist in Lane's murder, and Robinson would have testified that he overheard Tate's telephone conversation with Stanton-Lipscomb, and Stanton-Lipscomb did not mention the victim's name, but instead discussed "a matter between" Stanton-Lipscomb and Tate. However, Tate has not offered an affidavit from either Hall or Robinson, and Tate's affidavit is insufficient to establish

the factual predicate of his claim that Hall and Robinson would have provided exculpatory testimony. See *id*.

Additionally, the allegations in Tate's affidavit do not establish a substantial defense. The prosecution did not argue that Tate knew Lane personally or harbored any personal animosity against him. Instead, the prosecution's theory of the case was that the crime was motivated by gang rivalry and allegiance. The prosecution introduced evidence that Tate agreed to escort Lane to Stanton-Lipscomb because he and Stanton-Lipscomb shared gang affiliations, because Lane was a member of Hob Squad (a gang with a history of hostility toward the Rob Gang), and because Lane was heard making a disparaging remark about the Rob Gang. Tate's affidavit does not indicate that he was unaware of Lane's affiliation with Hob Squad or his disparaging remark about the Rob Gang, which was the alleged motive for the crime. Accordingly, Tate has failed to establish that his lawyer's performance was deficient.

## V. SENTENCE

### A. STANDARD OF REVIEW

Finally, Tate argues that his sentence of 40 to 60 years in prison is disproportionate and unreasonable because he was only 16 years old at the time of the offense. We review for an abuse of discretion the trial court's sentencing decision under MCL 769.25. *People v Skinner*, ___ Mich ___, ___; ___ NW2d ___ (2018) (Docket No. 152448), reh pending; slip op at 41.

### B. ANALYSIS

MCL 769.25 applies to criminal defendants convicted of first-degree murder who were less than 18 years of age at the time of the offense. Here, the prosecutor did not request a sentence of life imprisonment without the possibility of parole, MCL 769.25(3), (5), and (6); therefore, the trial court imposed a term-of-years sentence of 40 to 60 years in accordance with MCL 769.25(9), which states that the sentencing court must impose a maximum sentence of no more than 60 years and a minimum sentence of "not less than 25 years or more than 40 years."[1]

In *People v Wines*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 336550), lv pending; slip op at 3, this Court explained although "[t]here are no sentencing guidelines to guide a trial court's exercise of discretion within that very substantial [25 to 40 year minimum sentence] range," a court should nevertheless balance the following objectives when imposing a

---

[1] The prosecution argues that our review of a sentence imposed under MCL 769.25(9) is limited to determining whether the sentence is within the range authorized by the statute and was not based on inaccurate information. In support, the prosecution relies on standards applicable to review of sentences imposed pursuant to the legislative sentencing guidelines, which require this Court to affirm a sentence if it was within the guidelines range and it was not based on inaccurate information. See MCL 769.34(10); *People v Schrauben*, 314 Mich App 181, 196 n 1; 886 NW2d 173 (2016). However, the prosecution's reliance on those cases is misplaced because Tate's term-of-years sentence was not imposed under the sentencing guidelines.

-6-

sentence under MCL 769.25(9): " '(1) reformation of the offender, (2) protection of society, (3) punishment of the offender, and (4) deterrence of others from committing like offenses.' " *Wines*, ___ Mich App at ___; slip op at 3-4, quoting *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972). Stated differently, "when the sentence of life-without-parole is not at issue, the court should be guided by a balancing of the *Snow* objectives and in that context is required to take into account the attributes of youth such as those described in *Miller* [*Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012)]." *Id*. at ___; slip op at 4. "[A] failure to consider the distinctive attributes of youth, such as those discussed in *Miller*, when sentencing a minor to a term of years pursuant to MCL 769.25a, so undermines a sentencing judge's exercise of his or her discretion as to constitute reversible error." *Id*. Under *Miller*, the following factors should be considered:

> (1) "[defendant's] chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) "the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional"; (3) "the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him"; (4) whether "he might have been charged [with] and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys"; and (5) "the possibility of rehabilitation . . . ." [*Skinner*, ___ Mich at ___; slip op at 18-19, quoting *Miller*, 567 US at 477-478.]

Tate emphasizes that he was a 16-year-old minor at the time of the offense, in contrast to Stanton-Lipscomb who was an 18-year-old adult. However, the trial court considered Tate's youth and maturity level, commenting that "perhaps your age, and your maturity, were working against you," but it found that Tate "knew exactly what [he] was doing." Tate argues that the trial court failed to consider his lesser degree of culpability in comparison to Stanton-Lipscomb. Tate emphasizes that his role was "vastly different" than Stanton-Lipscomb, who was determined to shoot Lane regardless of Tate's involvement. Contrary to what Tate argues, the trial court did discuss Tate's role in the offense in comparison to Stanton-Lipscomb's role. The court acknowledged that Tate "did not start the process of this execution," but it found that he was a willing participant in the plan to kill a young man, and that Tate played a "very active role in the cold and calculated assassination of a very young man, Mr. Lane." The court also observed that Tate "volunteered to participate in the assassination of Mr. Lane" after Taylor had refused to do so.

Further, Tate's efforts to distinguish his culpability from Stanton-Lipscomb's culpability are unavailing considering that they did not receive similar sentences. Stanton-Lipscomb received a mandatory sentence of life without parole. Although the prosecution could have requested a life-without-parole sentence for Tate, it did not. The differences in the culpability are, therefore, reflected in the decision not to pursue a sentence that would have subjected Tate to imprisonment for life without parole.

Tate also asserts that he was "cooperative, articulate, and well-spoken during the pre-sentence interview," and "expressed remorse for the victim's family." However, the trial court commented that it was struck by Tate's statement in the presentence report that "I have nothing to do with it." The court also found that Tate's post-offense messages on Facebook showed that he had no remorse and showed that he was "a violent, deplorable young man who will continue to be violent, if allowed to do so." Evidence at trial indicated that, after the offense, Tate eluded and lied to the police, and boasted about how he would not be captured for his role in the shooting. Accordingly, based on the record before this Court, the trial court did not abuse its discretion by sentencing Tate to a prison term of 40 to 60 years for his murder conviction.

Affirmed.

/s/ Michael J. Kelly
/s/ Jane E. Markey
/s/ Karen M. Fort Hood