*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARC RICHARD BLACKLEDGE,

        Defendant-Appellant.

UNPUBLISHED
January 10, 2019

No. 341221
Clinton Circuit Court
LC No. 2016-009699-FH

Before: BOONSTRA, P.J., and SAWYER and TUKEL, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a jury trial, of assault by strangulation, MCL 750.84(1)(b), and assault and battery, MCL 750.81. The trial court sentenced defendant to 12 months in jail on the assault by strangulation conviction, and 93 days in jail for the assault and battery conviction.[1] We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant's convictions arose from a "road rage" incident involving an altercation between occupants of two motor vehicles and a bystander, Allyson Martin, who attempted to intervene. Dylan Wilson testified that he was driving a vehicle with his pregnant fiancée and two of her friends as passengers. Defendant was driving a truck with his adult son as a passenger. As defendant's truck passed Wilson's vehicle, Wilson's fiancée "flipped off" defendant's vehicle. Wilson testified that defendant forced Wilson to stop his vehicle by braking suddenly in front of him, got out of his truck, walked up to Wilson's lowered window, grabbed the back of Wilson's head, and pulled it towards the window. Wilson testified that he then got out of his vehicle, at which point defendant shoved him against the vehicle door. Meanwhile,

---

[1] Defendant was also convicted of operating a motor vehicle while intoxicated (OWI), MCL 257.625(1)(a), and was sentenced to 93 days in jail, to run concurrently with the other sentences. He does not challenge the OWI conviction on appeal.

defendant's son got into the truck and drove it in reverse about three feet, striking Wilson's vehicle. Wilson testified that defendant then grabbed him by the throat while defendant's son lifted him by the belt, and that the two lifted and dragged him into Martin's yard across the street. Wilson testified that he fell to the ground with defendant on top of him, holding his neck in a chokehold. Defendant's son also got on top of Wilson and grabbed his testicles as defendant continued the chokehold. Wilson stated that he could not breathe and that he believed he blacked out at this point. Wilson's fiancée, who largely corroborated Wilson's testimony, captured part of the altercation on video with her cell phone.

Martin testified that she saw the beginning of the fight through her living room window and went outside to find defendant and his son beating and hitting Wilson in her yard. She testified that she yelled for defendant to stop and tried to pull him off of Wilson, at which point defendant pushed her, causing her to fall backwards onto the ground. Other people then came to her aid. She testified that she did not want and did not ask to be pushed by defendant.

Defendant testified that he stopped his truck because Wilson's vehicle was following him and he believed that someone in Wilson's car had thrown something at his truck. He testified that when he approached Wilson's vehicle, Wilson and his fiancée began yelling and swearing at him. Defendant noticed that the fiancée was pregnant and commented that she did not look more than 15 years old. Defendant testified that Wilson became very angry and opened the vehicle door to get out; however, because the vehicle was still in gear, it lurched forward about 8 to 10 inches, causing the door to swing open and hit defendant in the hand, and then hit Wilson's body as he was exiting the vehicle. Defendant testified that Wilson "bull rushed" him by putting his head down and rushing towards defendant, hitting him in the midsection. Defendant claimed that he fell backwards into a ditch with Wilson on top of him. He testified that Wilson punched, kicked, and choked him. Defendant testified that he was "trying to control" Wilson, but denied punching, kicking, or choking him. Defendant testified that he never threw a punch, and could not do so because he suffered from rheumatoid arthritis.

Defendant further testified that Martin hit him on his back and on the back of his head, pulled on his arm, and yelled for him to get out of her yard. Defendant stated that he pushed Martin solely to get her away from him. He testified that he then went back to Wilson and put his hand on Wilson's head to restrain him. Defendant testified that he did not take any aggressive actions towards Wilson, but was just trying to "keep a hug" on him, to hold him until the police arrived. He testified that he had his hand on the side of Wilson's head to keep Wilson from getting up because he was afraid of Wilson. Martin then came back and told them again that she wanted them out of the yard, so Defendant complied.

The video-recorded portions of the encounter were played for the jury. The video showed defendant and Wilson having a verbal altercation outside of Wilson's car. After defendant stepped out of the camera's frame, a male voice could be heard saying "He just hit

me."[2] The video then showed portions of the vehicle's interior, and then it moved to the fight in progress on the grass. First, it showed defendant on top of Wilson; then it appeared to show Wilson on top of defendant. Defendant looked directly at the camera, said, "He's dead," and then rolled on top of Wilson. Next, the video showed defendant and Wilson on their knees with their arms around each other, struggling, and then shows defendant's son joining the struggle while defendant is almost completely on top of Wilson. Then, it shows a part of Martin's body as she is approaching, and next shows Martin's hands attempting to pull defendant off of Wilson. Defendant's arms then made a pushing movement to his left. The video later showed defendant with his hand on the right side of Wilson's head, holding it down, with his fingers lying downward over Wilson's neck. Martin could be heard shouting, "Get off my property" and "Move, you're on my property." After a few seconds, defendant said "OK," stood up, and took a few steps away from Wilson. The video did not show how Wilson got into Martin's yard. Also, the video never showed Wilson being held in a chokehold, and although it showed defendant pushing someone, it did not show whether it was Martin he was pushing.

Defendant's theory of the case was that he acted in self-defense. The jury convicted defendant as described. This appeal followed. On appeal, defendant challenges the sufficiency of the evidence supporting his assault convictions.

## II. STANDARD OF REVIEW

This Court reviews de novo challenges to the sufficiency of the evidence. *People v Solloway*, 316 Mich App 174, 180; 891 NW2d 255 (2016); *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). We must determine whether, taking the evidence in the light most favorable to the prosecution, the evidence was sufficient to justify a rational trier of fact to conclude that the evidence proved the essential elements of the crime beyond a reasonable doubt. *People v Hampton*, 407 Mich 354, 368; 285 NW2d 284 (1979); *Solloway*, 316 Mich App at 180; *Ericksen*, 288 Mich App at 196. All conflicts in the evidence are resolved in favor of the prosecution. *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014). In reviewing a sufficiency challenge, this Court may not determine the weight of the evidence or the credibility of the witnesses. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748, amended 441 Mich 1201 (1992); *People v Mehall*, 454 Mich 1, 6; 557 NW2d 110 (1997); *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). Circumstantial evidence and reasonable inferences drawn from it may be sufficient to prove the elements of an offense beyond a reasonable doubt. *People v Schumacher*, 276 Mich App 165, 167; 740 NW2d 534 (2007); *People v Harrison*, 283 Mich App 374, 378; 768 NW2d 98 (2009). Because of the difficulty in proving an actor's state of mind, minimal circumstantial evidence will suffice to establish a defendant's intent. *Ericksen*, 288 Mich App at 197.

---

[2] Although the video does not show who made that comment, defendant testified at trial that, when standing outside of Wilson's vehicle, he stated, "He hit me," and that he was referring to Wilson's car door hitting his hand.

III. ANALYSIS

Defendant argues that there was insufficient evidence to show that he choked Wilson or that he intentionally pushed Martin. Further, defendant claims that the prosecution did not establish beyond a reasonable doubt that he did not act in self-defense. We disagree.

The Due Process Clause of the United States Constitution protects an accused against being convicted of a crime except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. US Const, Am V; *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970); *Wolfe*, 440 Mich at 514. Due process requires that the prosecution introduce sufficient evidence to enable a reasonable trier of fact to conclude that the defendant is guilty beyond a reasonable doubt. *Hampton*, 407 Mich at 368; *People v Harverson*, 291 Mich App 171, 175; 804 NW2d at 757 (2010).

## A. ASSAULT AND BATTERY

MCL 750.81 provides in pertinent part:

(1) Except as otherwise provided in this section, a person who assaults or assaults and batters an individual, if no other punishment is prescribed by law, is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $500.00, or both.

Assault is either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery. *People v Starks*, 473 Mich 227, 234; 701 NW2d 136 (2005). The first type of assault is characterized as "attempted-battery assault"; the second is characterized as "apprehension-type assault." *Id*. at 234. Battery is "an intentional, unconsented and harmful or offensive touching of the person of another or of something closely connected with the person. *Id*. at 234; *People v Nickens*, 470 Mich 622, 628; 685 NW2d 657 (2004). Therefore, a battery is the successful accomplishment of an attempted-battery assault. *Nickens*, 470 Mich at 625; *Tinkler v Richter*, 295 Mich 396, 401; 295 NW 201 (1940); *People v Terry*, 217 Mich App 660, 662; 553 Nw2d 23 (1996).

Assault is a specific intent crime. *People v Norwood*, 123 Mich App 287, 295; 333 NW2d 255 (1983). However, a defendant need not announce his intent; it may be inferred from all the facts and circumstances, including words, conduct, or the manner in which the crime was committed. *People v Hawkins*, 245 Mich App 439, 458; 628 NW2d 105 (2001).

Here, defendant was charged with assault and battery for pushing Martin as she tried to pull him off of Wilson. There was sufficient evidence presented to establish that defendant intentionally, and without consent, harmfully and offensively touched Martin. *Starks*, 473 Mich at 234. Martin testified that defendant pushed her forcefully and that she fell backwards. She testified that she did not consent to this contact from defendant. Martin's testimony is direct evidence that supports the charge and conviction. In addition, while defendant is correct that the video does not show defendant pushing her, the video does show Martin approach defendant on his left side, and shortly thereafter defendant making a pushing movement to his left. Martin's testimony alone was sufficient evidence to allow a reasonable jury to conclude that defendant intentionally, and without consent, harmfully and offensively touched Martin and thus

-4-

committed assault and battery. See *Nickens*, 470 Mich at 28 (noting that an attempted-battery assault is a necessarily lesser included offense of a completed battery). The video evidence presented at trial did not contradict, and indeed provided some support for, this testimony. Taken in the light most favorable to the prosecution, there was sufficient evidence to support the jury's conclusion that defendant assaulted and battered Martin. See *Hampton*, 407 Mich at 368.

## B. ASSAULT BY STRANGULATION

MCL 750.84 provides in pertinent part:

> (1) A person who does either of the following is guilty of a felony punishable by imprisonment for not more than 10 years or a fine of not more than $5,000.00, or both:
>
> * * *
>
> (b) Assaults another person by strangulation or suffocation.
>
> (2) As used in this section, 'strangulation or suffocation" means *intentionally impeding normal breathing or circulation of the blood by applying pressure on the throat or neck* or by blocking the nose or mouth of another person. (Emphasis added).

There was sufficient evidence presented to convict defendant of assault by strangulation. Defendant does not argue that he did not have physical contact with Wilson, and instead argues only that there was no evidence of strangulation. But Wilson testified that defendant grabbed him in a chokehold in a way that impeded his breathing and caused him to eventually black out. Wilson further testified that once in Martin's yard, he "got brought to the ground" and defendant was on top of him, still holding his neck. Also, Wilson's fiancée testified that defendant took Wilson to the ground and started "choking him out."

The testimony of Wilson and his fiancée provided direct evidence that defendant battered, and thereby assaulted, Wilson by strangulation. See *Nickens,* 470 Mich at 628; MCL 750.84(1)(b)(2). And again, the video evidence did not contradict this testimony; although the video (which did not capture the entire altercation between Wilson and defendant) does not show defendant actively choking Wilson, it does show defendant having his hands on Wilson's neck at one point. Taken in a light most favorable to the prosecution, there was sufficient evidence to support the jury's conclusion that defendant committed an assault by strangulation. See *Hampton*, 407 Mich at 368.

## C. SELF-DEFENSE

Defendant also argues that even if there was sufficient evidence to support his convictions beyond a reasonable doubt, the prosecution did not sufficiently disprove his claim of self-defense. We disagree.

The prosecution bears the burden of disproving the defense of self-defense. *People v Dupree*, 486 Mich 693, 709; 788 NW2d 399 (2010). Once the defendant injects the issue of self-

defense and satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist, the prosecution must exclude the possibility of self-defense beyond a reasonable doubt. *People v Stevens*, 306 Mich App 620, 630; 858 NW2d 98 (2014).

The Self Defense Act, MCL 780.971 et seq, states in pertinent part with regard to the use of non-deadly force:

> An individual who has not or is not engaged in the commission of a crime at the time he or she uses force other than deadly force may use force other than deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if he or she honestly and reasonably believes that the use of that force is necessary to defend himself or herself or another individual from the imminent unlawful use of force by another individual. [MCL 780.972(2).]

However, a defendant does not act in justifiable self-defense when he or she uses excessive force or when the defendant is the initial aggressor. *Dupree*, 486 Mich at 707; *People v Guajardo*, 300 Mich App 26, 35; 832 NW2d 409 (2013).

Here, the trial court instructed the jury regarding self-defense. It also instructed that if a person uses lawful self-defense, he or she is not guilty of the charged crime(s). The jury found defendant guilty of the crimes charged, necessarily also finding that defendant did not act in lawful self-defense. There was sufficient evidence presented to prove beyond a reasonable doubt that defendant did not lawfully act in self-defense. Wilson testified that defendant was the initial aggressor who escalated the confrontation from verbal to physical. Although defendant testified that Wilson was the initial aggressor, the jury could choose to disbelieve defendant's testimony. The jury is responsible for determining questions of credibility; and this Court will not interfere with the factfinder's credibility determinations. *Harrison*, 283 Mich App at 378; *Stevens*, 306 Mich App at 630; *Kanaan*, 278 Mich App at 619.

Even if defendant was not the initiator of the confrontation as a whole, the jury could have found, by virtue of Wilson's testimony, that defendant was the first to escalate the confrontation to physical violence. "[I]t is generally held that the aggressor is the one who first does acts of such nature as would ordinarily lead to a deadly combat or as would put the other person involved in fear of death or serious bodily injury." *People v Van Horn*, 64 Mich App 112, 115; 235 NW2d 80 (1975), quoting 1 Wharton's Criminal Law (Anderson's ed), § 229, p 501. Verbal remarks, vulgarity, and taunting are generally insufficient to justify the use of physical force in self-defense. See, e.g., *Guajardo*, 300 Mich App 26.

Further, even if the jury had found that Wilson was the initial aggressor, the jury could have concluded that defendant used excessive force in response by choking Wilson until he lost consciousness. See *Dupree*, 486 Mich at 707. Whether the force used by defendant was excessive under the circumstances is for the jury to decide. *Harrison*, 283 Mich at 378.

Finally, to the extent that defendant argues self-defense against Martin, the jury could have found that defendant's reaction to her attempt to pull him off of Wilson was not justified by

an honest and reasonable belief that the use of such force was necessary, or that the amount of force defendant used in pushing her to the ground was excessive. *Id.*

Viewing the evidence in a light most favorable to the prosecution, the evidence was sufficient to allow a reasonable jury to conclude beyond a reasonable doubt that defendant committed the charged offenses and did not act in self-defense. *Hampton*, 470 Mich at 368.

Affirmed.

/s/ Mark T. Boonstra
/s/ David H. Sawyer
/s/ Jonathan Tukel