*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ANTHONY DAVIN MANGIAPANE,

Defendant-Appellant.

UNPUBLISHED
June 23, 2025
10:46 AM

No. 369741
Macomb Circuit Court
LC No. 2022-002221-FH

Before: GARRETT, P.J., and RICK and FEENEY, JJ.

PER CURIAM.

As Eric Montgomery walked down Schoenherr Road, defendant, Anthony Davin Mangiapane, flashed a green laser attached to his firearm at Montgomery. Mangiapane also yelled a racial slur at Montgomery and then fired three gunshots. Mangiapane appeals by right his jury-trial convictions of assault with a dangerous weapon (felonious assault), MCL 750.82; possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b; and ethnic intimidation, MCL 750.147b. The trial court sentenced Mangiapane to one year and two months to four years' imprisonment for the felonious assault conviction, two years' imprisonment for the felony-firearm conviction, and one to two years' imprisonment for the ethnic intimidation conviction. Because the evidence was sufficient to support his convictions, and he is not entitled to resentencing, we affirm.

## I. BACKGROUND AND PROCEDURAL HISTORY

At approximately 11:30 p.m., Montgomery walked down Schoenherr Road between Eight and Nine Mile Roads in Warren. He was talking to his girlfriend on the phone. As he walked past a white building located across the street, a green laser beam flashed on his face. He stated, "get that beam out of my face," and heard someone across the street yell, "[N]****r, you better keep your [sic] moving." He turned and saw Mangiapane standing in front of the door of the white building. Montgomery turned around to continue walking and heard three gunshots, which prompted him to walk quickly to a nearby gas station where his girlfriend picked him up. He then called the police.

-1-

Police officers investigated the white building and spoke to Mangiapane, who was inside the building, through a glass door. They noticed that Mangiapane appeared intoxicated and was holding a beer can. After talking to the officers, Mangiapane walked to a desk and sat in an office chair behind the desk. The officers found a spent shell casing on the ground 10 to 15 feet away from the door of the building. They attempted to persuade Mangiapane to come outside, but he refused. A Special Response Team arrived and attempted to convince Mangiapane to surrender. At approximately 6:30 a.m., he surrendered and officers arrested him. Officers searched the building after obtaining a search warrant. Inside a safe, they found an AR-style rifle equipped with a flashlight attachment and a green laser attachment. Testing confirmed that the spent shell casing found outside the building was fired from the AR-style rifle.

A jury convicted Mangiapane as described above.[1] On appeal, he challenges the sufficiency of the evidence to support his felonious assault and ethnic intimidation convictions and argues that the trial court erroneously scored his sentencing guidelines.

## II. SUFFICIENCY OF EVIDENCE

### A. STANDARD OF REVIEW AND LEGAL PRINCIPLES

In order to satisfy a defendant's due process protections, the prosecution must present sufficient evidence to establish guilt beyond a reasonable doubt. *People v Prude*, 513 Mich 377, 384; 15 NW3d 249 (2024). We review de novo a challenge to the sufficiency of the evidence. *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019). "We review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution proved the crime's elements beyond a reasonable doubt." *Id*. We must "draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018). "The prosecution need not negate every reasonable theory of innocence; instead, it need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant." *People v Mikulen*, 324 Mich App 14, 20; 919 NW2d 454 (2018). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Oros*, 502 Mich at 239 (quotation marks and citation omitted).

### B. FELONIOUS ASSAULT

In order to convict a defendant of felonious assault, a prosecutor must prove: "(1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Nix*, 301 Mich App 195, 205; 836 NW2d 224 (2013) (quotation marks and citation omitted). "A trier of fact can infer a defendant's intent from his words, acts, means, or the manner used to commit the offense." *People v Harrison*, 283 Mich App 374, 382; 768 NW2d 98 (2009). "An assault may be established by showing either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v Starks*, 473 Mich 227, 234; 701 NW2d 136 (2005). "The first type of assault is characterized as attempted-battery assault; the second is characterized

---

[1] The jury acquitted Mangiapane of resisting or obstructing a police officer, MCL 750.81d.

as apprehension-type assault." *Id*. (quotation marks and citation omitted). A battery is "an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *Id*. (quotation marks and citations omitted).

Mangiapane agues that insufficient evidence supported his felonious assault conviction because hearing gunshots does not constitute an assault. More specifically, he contends that no evidence showed that he fired gunshots at Montgomery. The record shows, however, that Montgomery feared an immediate battery as a result of the gunshots coupled with his interaction with Mangiapane. Montgomery was walking on the sidewalk across the street from Mangiapane when a green laser beam flashed on his face. After Montgomery stated, "get that beam out of my face," Mangiapane directed Montgomery to continue walking and called him a racial slur. Shortly after their exchange, Montgomery heard gunshots and started walking faster. When asked why he did not start running, he replied," I didn't want him to start shooting more at me."

The surveillance video corroborated Montgomery's testimony. It showed that Mangiapane aimed a firearm with a green laser pointer at Montgomery as he walked down the street. The video depicted a glowing light moving around and focusing on Montgomery. While there was no evidence that Mangiapane shot directly at Montgomery, the prosecutor presented evidence that Mangiapane fired the rifle and that Montgomery believed that Mangiapane fired the rifle at him. The police recovered a spent shell casing outside the building, which was fired from the rifle found inside the safe. Mangiapane fired the rifle immediately following his verbal exchange with Montgomery, and Montgomery testified that he did not run after hearing gunshots because he did not want Mangiapane "to start shooting more" at him. Accordingly, Mangiapane's actions placed Montgomery in reasonable apprehension of an immediate battery. See *Starks*, 473 Mich at 234. The prosecutor therefore presented sufficient evidence for the jury to conclude beyond a reasonable doubt that Mangiapane committed felonious assault.

## C. ETHNIC INTIMIDATION

Mangiapane also argues that the prosecutor presented insufficient evidence to convict him of ethnic intimidation because the evidence failed to demonstrate that Montgomery's race motivated his actions. Mangiapane asserts that Montgomery's presence in the area at 11:30 p.m. was suspicious, and he believed that he was possibly thwarting a crime. At the time relevant to this case, MCL 750.147b, stated, in relevant part:[2]

(1) A person is guilty of ethnic intimidation if that person maliciously, and with specific intent to intimidate or harass another person because of that person's race, color, religion, gender, or national origin, does any of the following:

(a) Causes physical contact with another person.

---

[2] Our Legislature amended MCL 750.147b pursuant to 2024 PA 259, effective April 2, 2025. We rely on the version of the statute in effect at the time that Mangiapane committed the offense. See *People v Smith*, 506 Mich 1, 5 n 2; 954 NW2d 78 (2020).

(b) Damages, destroys, or defaces any real or personal property of another person.

(c) Threatens, by word or act, to do an act described in subdivision (a) or (b), if there is reasonable cause to believe that an act described in subdivision (a) or (b) will occur.

"The statute is satisfied only when there is evidence of an underlying predicate criminal act committed because of racial animosity." *People v Schutter*, 265 Mich App 423, 428; 695 NW2d 360 (2005) (quotation marks and citation omitted). The jury can infer the defendant's intent from his words and acts. *Harrison*, 283 Mich App at 382.

The evidence showed that Mangiapane shone a laser beam on Montgomery as he was walking down the street. When Montgomery directed Mangiapane to stop shining the light on him, Mangiapane responded with a racial slur. As this Court determined in *People v Stevens*, 230 Mich App 502, 506; 584 NW2d 369 (1998), the "use of the word 'n****r' " "provide[s] strong evidence of a racist motive." See also *Schutter*, 265 Mich App at 430-431 (the defendants' use of racial epithets created a reasonable inference that they intended to assault the victim because of his race). In addition, Mangiapane told his girlfriend after his encounter with Montgomery that he had "to teach a n****r a lesson." Mangiapane's words alone were strong evidence that he acted in the manner he did because of Montgomery's race. Although Mangiapane claims that Montgomery's intentions were suspect, Montgomery was simply walking down the street and nothing more. Further, though Mangiapane presented character evidence to show that he was nonviolent and not racist, the jury was tasked with weighing the evidence and deciding which testimony to accept. Viewing the evidence in the light most favorable to the prosecution, the evidence was sufficient for the jury to conclude that Mangiapane's actions were racially motivated.

## III. OV 1 (AGGRAVATED USE OF A WEAPON)

Next, Mangiapane argues that the trial court erroneously assessed 15 points for offense variable (OV) 1. Mangiapane objected to the scoring of OV 1 on the basis that no evidence showed that he pointed the firearm at Montgomery. The trial court determined that assessing 15 points for OV 1 was proper because Mangiapane pointed the laser at Montgomery, which indicates that he pointed the firearm at Montgomery.

### A. STANDARD OF REVIEW AND LEGAL PRINCIPLES

We review for clear error a trial court's factual determinations relevant to sentencing. *People v Muniz*, 343 Mich App 437, 452; 997 NW2d 325 (2022). "Clear error exists when we are left with a definite and firm conviction that a mistake was made." *People v Abbott*, 330 Mich App 648, 654; 950 NW2d 478 (2019). We review de novo as a question of statutory interpretation "[w]hether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law . . . ." *Id.* (quotation marks and citation omitted). A preponderance of the evidence must support the trial court's factual determinations regarding the offense variables. *Muniz*, 343 Mich App at 452-453. "The trial court may rely on reasonable inferences arising from the record evidence to sustain the scoring of an offense variable." *Id*. at 453.

### B. ANALYSIS

MCL 777.31(1)(c) instructs that 15 points should be assessed for OV 1 if "[a] firearm was pointed at or toward a victim . . . ." Mangiapane contends that the trial court erred by inferring that he pointed the firearm at Montgomery simply because he pointed the laser at Montgomery. He asserts that Montgomery "may well have been in the edge of the beam of light from the mounted flashlight without being directly in the path of the presumably more narrow laser beam." Mangiapane's argument lacks merit. The surveillance video shows the laser beam on Montgomery's person and in his immediate vicinity. Montgomery also testified that a green beam was flashing in his face. It may be reasonably inferred from the evidence that the firearm was pointed at or toward Montgomery if the mounted laser beam was pointed in his direction. Consequently, the trial court properly assessed 15 points for OV 1.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Michelle M. Rick
/s/ Kathleen A. Feeney