*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 1, 2024

Plaintiff-Appellee,

v

No. 362347
Kent Circuit Court
LC No. 21-003238-FC

JAMARIE NICHOLUS BELL,

Defendant-Appellant.

Before: REDFORD, P.J., and RIORDAN and FEENEY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for (1) first-degree premeditated murder, MCL 750.316(1)(a); (2) felony gang membership, MCL 750.411u; and (3) felony-firearm, MCL 750.227b. The trial court sentenced defendant to serve 40 to 120 years in prison for first-degree murder, 12 to 20 years in prison for felony gang membership, and two consecutive years in prison for felony-firearm. We affirm defendant's convictions but vacate his sentence and remand to the trial court for resentencing—during resentencing, the trial court must consider defendant's youth as a mitigating factor in accordance with *People v Boykin*, 510 Mich 171; 987 NW2d 58 (2022).

This case arises out of the shooting and killing of the victim in the early morning hours of October 6, 2020. At the time of the shooting, the victim was sitting in a car, parked at Miss Tracy's convenience store, with three friends. Defendant conceded at trial that he was responsible for the killing but testified that he acted in self-defense. The jury apparently disbelieved his testimony and found him guilty as noted above.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that there was insufficient evidence to support his conviction of first-degree premeditated murder. We disagree.

We review de novo a sufficiency-of-the-evidence claim. *People v Solloway*, 316 Mich App 174, 180; 891 NW2d 255 (2016). We examine the evidence in the light most favorable to the prosecutor to determine whether the prosecutor presented sufficient evidence that could allow a

-1-

rational trier of fact to find the defendant guilty beyond a reasonable doubt. See *People v Smith-Anthony*, 494 Mich 669, 676; 837 NW2d 415 (2013); see also *Jackson v Virginia*, 443 US 307, 324; 99 S Ct 2781; 61 L Ed 2d 560 (1979).

"A prosecutor need not present direct evidence of a defendant's guilt. Rather, '[c]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime.' " *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011) (alteration in original), quoting *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). "The credibility of witnesses and the weight accorded to evidence are questions for the jury, and any conflict in the evidence must be resolved in the prosecutor's favor." *People v Harrison*, 283 Mich App 374, 378; 768 NW2d 98 (2009). "[W]e will not resolve credibility issues anew on appeal." *People v Milstead*, 250 Mich App 391, 404; 648 NW2d 648 (2002).

First-degree premeditated murder includes "[m]urder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing." MCL 750.316(1)(a). In *People v Oros*, 502 Mich 229, 240; 917 NW2d 559 (2018), our Supreme Court stated that "[t]o premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." (Quotation marks and citation omitted.) Additionally, this Court has stated that "[t]he elements of premeditation and deliberation may be inferred from circumstances surrounding the killing. Minimal circumstantial evidence is sufficient to prove an actor's state of mind." *People v Ortiz*, 249 Mich App 297, 301; 642 NW2d 417 (2001) (quotation marks and citation omitted).

Defendant specifically argues that there was insufficient evidence to prove premeditation and deliberation. Moreover, defendant argues that he acted in self-defense; therefore, the prosecution has the burden "to prove beyond a reasonable doubt that the defendant did not act in self-defense." *People v Watts*, 61 Mich App 309, 311; 232 NW2d 396 (1975).[1] However, when the evidence is reviewed in the light most favorable to the prosecution, a rational trier of fact could find that: (1) the essential elements of murder were proven beyond a reasonable doubt, and (2) the prosecutor disproved defendant's self-defense claim beyond a reasonable doubt.

In this case, the parties stipulated "[t]hat '7' satisfies the legal definition for a 'gang' under Michigan law and that [defendant] is associated with members of that group." Defendant's friend Brandon Broyles, who wrote some of the Seven gang's rules, explained that the members of Seven "came together because no nobody liked" the Bemis gang. Broyles also indicated that

---

[1] "Under the common law, the affirmative defense of self-defense justified the killing of another person if the defendant honestly and reasonably believes his life is in imminent danger or that there is a threat of serious bodily harm and that it is necessary to exercise deadly force to prevent such harm to himself." *People v Guajardo*, 300 Mich App 26, 35; 832 NW2d 409 (2013) (quotation marks and citations omitted). The Self-Defense Act, MCL 780.971 *et seq.*, "codifie[s] the circumstances in which a person may use deadly force in self-defense or in defense of another person without having the duty to retreat." *Id*. (quotation marks and citation omitted).

Miss Tracy's was within the Bemis gang's territory—he explained that he did not hang out near Miss Tracy's because he "don't like [Bemis], and [Bemis] don't like [him]."

On October 4, 2020, defendant messaged a friend the following: "Bitch I'm on [my way back to Grand Rapids] we at war y'all boys trippin . . . . Ya'll soft . . . . Somebody getting dropped." Detective Amanda Johnson of the Grand Rapids Police Department explained that "when somebody says I'm going to drop you, or if something to that effect, that means they're going to shoot, kill." Similarly, Broyles testified that "drop" means "shoot." On October 5, 2020, at approximately 12:53 a.m., defendant sent a Facebook message to his friends that stated: "Don't tell nobody I'm coming back." At approximately 12:55 a.m., defendant sent a message that stated: "Only u and arri and my gang know. Imma take care of some shit and probably catch a flight back."

After the shooting, on October 6, 2020, at approximately 12:52 a.m., defendant's friend, Shaquan Washington, messaged defendant, stating: "Bro, that whole situation irritated my soul. Someone was supposed to drop." At approximately 1:31 a.m., defendant sent Washington a message that said, "I hit" with an attachment to the news article regarding the shooting. At approximately 9:23 a.m., Washington responded, telling defendant to delete the message. At approximately 9:30 a.m., Washington sent defendant a message, stating: "That's why I said, ain't no secret, was understood, ain't got to be explained. I was sleep. You was with me, slump in the whip."

Defendant's communications surrounding the time of the shooting—combined with Detective Johnson's and Broyles's explanation of the word "drop"—indicate that defendant knew that: (1) someone was going to get shot or killed before the shooting occurred; (2) very shortly after the shooting, Washington was irritated because he wanted someone to get shot or killed; and (3) when defendant saw the news article regarding the shooting, defendant took responsibility for shooting the unnamed victim. These facts are sufficient to show premeditation and deliberation for the purposes of first-degree murder. See *Ortiz*, 249 Mich App at 301.

Defendant testified that he acted in self-defense because an unknown shooter near Miss Tracy's began shooting at him first. However, four eyewitnesses testified differently—the only evidence presented for a self-defense argument was defendant's own testimony. The four eyewitnesses all testified that there was no indication that anyone had any "beef" before the shooting happened. Additionally, the eyewitnesses who were friends with the victim all testified that they were just sitting in a car, with the victim, when the car was hit with bullets.

In addition to the eyewitness testimony, the prosecution admitted other evidence that was inconsistent with a self-defense argument. For example, defendant recorded a video showcasing the rifle the morning after the shooting. Defendant also held up the rifle in a Facebook Live video that Broyles recorded sometime after the shooting. Additionally, defendant tried to sell the rifle because "[i]t was hot," meaning it was used in a shooting. Broyles further explained that he had plans to visit California before the shooting occurred, and at some point after the shooting, defendant decided to join him. On October 7, 2020, defendant withdrew $8,700—defendant testified that this money was to be spent in California. Notably, Broyles testified that defendant "confirmed" that he was involved in the shooting, but that defendant never indicated that he acted in self-defense.

Regarding defendant's credibility, defendant acknowledged that he lied during his investigative subpoena questioning by stating that he had an alibi at the time of the shooting. Moreover, for over a year, in his communications from jail, defendant discussed an alibi defense with various people—Detective Johnson explained that defendant never mentioned self-defense during these communications, and there were several communications in which defendant told Washington not to "snitch" on him. Therefore, although defendant testified that he acted in self-defense, the jury seemingly, and reasonably, determined that his testimony was not credible. See *Harrison*, 283 Mich App at 378; *Milstead*, 250 Mich App at 404.

Accordingly, the prosecutor presented sufficient evidence that could allow a rational trier of fact to find defendant guilty of first-degree premeditated murder beyond a reasonable doubt.

## II. SENTENCING

Defendant argues that the trial court erred by failing to consider his youth as a mitigating factor at sentencing. We agree.

"[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion." *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). "[A]ppellate review of departure sentences for reasonableness requires review of whether the trial court abused its discretion by violating the principle of proportionality . . . ." *Id*. at 477. Instead of measuring proportionality by references to deviations in the guidelines, the Michigan principle of proportionality "requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*. at 474 (quotation marks and citation omitted). Questions of law are reviewed de novo. *People v Booker*, 314 Mich App 416, 419; 886 NW2d 759 (2016).

In *Miller v Alabama*, 567 US 460, 470; 132 S Ct 2455; 183 L Ed 2d 407 (2012), the United States Supreme Court concluded "that mandatory life-without-parole sentences for juveniles violate the Eighth Amendment." After *Miller*, MCL 769.25 was enacted which "applies to a criminal defendant who was less than 18 years of age at the time he or she committed an offense" —such as first-degree premeditated murder—and when the defendant's conviction occurred after the statute was enacted. MCL 769.25(1)(a). MCL 769.25(2)(d) states that the prosecutor "may file a motion under this section to sentence a defendant . . . to imprisonment for life without the possibility of parole" when the defendant is convicted of "[a]ny violation of law involving the death of another person for which parole eligibility is expressly denied under state law." However, MCL 769.25(9) states as follows:

> If the court decides not to sentence the individual to imprisonment for life without parole eligibility, the court shall sentence the individual to a term of imprisonment for which the maximum term shall be not less than 60 years and the minimum term shall be not less than 25 years or more than 40 years.

Regarding Michigan caselaw that existed at the time of sentencing in this case, in *People v Wines*, 323 Mich App 343, 350; 916 NW2d 855 (2018), rev'd in part on other grounds 506 Mich 954 (2020), this Court reasoned that if a trial court elects to impose a term-of-years sentence in

cases such as this one, "[t]here are no sentencing guidelines to guide a trial court's exercise of discretion within" the minimum term range of 25 years to 40 years. Therefore, this Court concluded that "when sentencing a minor convicted of first-degree murder, when the sentence of life imprisonment without parole is not at issue, the court should be guided by a balancing of the *Snow*[2] objectives . . . ." *Id.* at 352. Those four considerations are: (1) "reformation of the offender," (2) "protection of society," (3) "disciplining of the wrongdoer," and (4) "deterrence of others from committing like offenses." *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972).

However, a month after defendant's sentencing, our Supreme Court concluded "that in all sentencing hearings conducted under MCL 769.25 or MCL 769.25a, trial courts are to consider the defendant's youth and must treat it as a mitigating factor." *Boykin*, 510 Mich at 189. Therefore, when the trial court sentenced defendant, it was required to consider the *Snow* factors as well as defendant's youth at the time of the shooting. See *id*.

In this case, the prosecution initially sought to have defendant sentenced to life without the possibility of parole. Thereafter, the prosecution withdrew that intent and, instead, sought a term of years sentence. During sentencing, the trial court stated, "I'm very familiar with the facts and circumstances of this matter . . . ." However, the trial court did not explicitly acknowledge that defendant was 17 years old at the time of the shooting. Because it is unclear whether the trial court properly considered youth to be a mitigating factor in this case, defendant's sentence must be vacated and the matter remanded for the trial court to do so.[3]

## III. MAXIMUM SENTENCE

Defendant argues that the trial court erred by imposing a 120-year maximum sentence because a maximum term of 60 years was set by statute. We disagree.

Defendant did not object to his sentencing. Therefore, this issue is not preserved. See *People v Heft*, 299 Mich App 69, 78; 829 NW2d 266 (2012). When reviewing an unpreserved claim of error in a criminal case, we must determine whether there was a plain error that affected the defendant's substantial rights. *Carines*, 460 Mich at 763. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Moreover, our Supreme Court has stated as follows:

> [O]nce a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public

---

[2] *People v Snow*, 386 Mich 586; 194 NW2d 314 (1972).

[3] We note that the prosecutor concedes on appeal that a remand is required for this purpose.

reputation of judicial proceedings independent of the defendant's innocence. [*Id.* (quotation marks and citation omitted).]

Additionally, "[w]e review any question of the proper interpretation of the underlying criminal law de novo." *People v Perkins*, 468 Mich 448, 452; 662 NW2d 727 (2003).

MCL 769.25(4) states as follows:

If the prosecuting attorney does not file a motion [seeking a sentence of imprisonment for life without the possibility of parole] within the time periods provided [21 days after the defendant is convicted], the court shall sentence the defendant to a term of years as provided in subsection (9).

MCL 769.25(9) states as follows:

If the court decides not to sentence the individual to imprisonment for life without parole eligibility, the court shall sentence the individual to a term of imprisonment for which *the maximum term shall be not less than 60 years* and the minimum term shall be not less than 25 years or more than 40 years. [Emphasis added.]

In *People v Meadows*, 319 Mich App 187, 189-191; 899 NW2d 806 (2017), this Court contrasted the language of MCL 769.25(9) with the language of MCL 769.25a(4)(c), which applies *Miller* retroactively. MCL 769.25a(4)(c) states in relevant part as follows: "If the prosecuting attorney does not file a motion under subdivision (b), the court shall sentence the individual to a term of imprisonment for which *the maximum term shall be 60 years* and the minimum term shall be not less than 25 years or more than 40 years." (Emphasis added.) This Court concluded that MCL 769.25(9) "reflects that the Legislature is more than capable of clearly indicating whether a maximum term of imprisonment provides some room for the exercise of discretion, which is not the case with MCL 769.25a(4)(c)." *Meadows*, 319 Mich App at 191 n 1. In other words, this Court reasoned that if the Legislature had intended MCL 769.25(9) to establish a maximum term of precisely 60 years in prison, it would have used the language found in MCL 769.25a(4)(c). See *id*. Because the Legislature did not use the language found in MCL 769.25a(4)(c), it must have intended to confer discretion when sentencing under MCL 769.25(9). *Id*.

In this case, the prosecution initially sought to have defendant sentenced to life in prison without the possibility of parole. However, the prosecution withdrew that intent and, instead, sought a term of years sentence. Therefore, in accordance with MCL 769.25(9), the trial court appropriately sentenced defendant to serve 40 to 120 years in prison—this sentence has a minimum of not more than 40 years and a maximum of not less than 60 years. The trial court was permitted to exercise its discretion by sentencing defendant to a maximum term of more than 60 years in prison, and no plain error occurred.

## IV. CONCLUSION

We affirm defendant's convictions, but vacate his sentence and remand to the trial court for resentencing. During resentencing, the trial court must consider defendant's youth as a mitigating factor in line with *Boykin*. We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Michael J. Riordan
/s/ Kathleen A. Feeney